**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JAWAD MOUAWAD,**

        **Plaintiff,**                  Case No. 08-15136

v.                                              Hon. Victoria A. Roberts

**DISTRICT DIRECTOR, USCIS DETROIT,**
**UNITED STATES DEPARTMENT OF**
**HOMELAND SECURITY, U.S. ATTORNEY**
**GENERAL AND FEDERAL BUREAU OF**
**INVESTIGATION,**

        **Defendants.**
_____

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on the Court's own Motion to determine whether it has subject matter jurisdiction. The Court ordered an expedited briefing schedule and instructed the parties to file briefs specifically addressing the issue of whether "this matter is the proper subject of a petition for Writ of Habeas Corpus and/or Writ of Mandamus."

**II.    BACKGROUND**

Plaintiff Jawad Mouawad is a 31 year old native and citizen of Lebanon. Plaintiff was admitted to the United States on or around May 10, 2000, as a non-immigrant

1

Artist/Entertainer in a Culturally Unique Program (P3 status).  On August 2, 2002, he married a United States citizen.  Plaintiff's status was adjusted to conditional permanent resident on December 10, 2003, based on his qualifying marriage.  On September 23, 2005, Plaintiff and his wife filed a joint petition, Form I-751, to remove the conditions, asserting that they were in a bona fide relationship with each other.  They missed an interview on October 12, 2006.  On November 1, 2006, Plaintiff and his wife appeared for a rescheduled interview.  They presented evidence and testimony in support of the joint petition.  Plaintiff's petition has been pending since then.

Defendants suspect that Plaintiff and his wife were not and are not engaged in a bona fide relationship with each other.  Defendants say they requested further evidence to be submitted within 30 days of Plaintiff's interview, which they did not receive.

Nearly one year later, on September 18, 2007, the USCIS informed Plaintiff that it intended to deny the joint petition and gave him an additional 30 days to submit evidence requested earlier, to overcome the basis of the proposed denial.  Additional information was furnished by letter dated October 17, 2007.

On December 21, 2007, Plaintiff enlisted into the United States Army Reserves.  He is scheduled to deploy with his reserve unit on February 25, 2009 and says he can not ship out unless the conditions on his residence are removed.  Plaintiff says he has postponed his deployment five times while awaiting the results of his I-751 petition.  This is the final time he can deploy with his unit.  However, the original Notice of Action on Plaintiff's I-751 petition says that employment and travel are authorized.  Thus, it is unclear whether he cannot deploy due to an army regulation, a personal decision or an immigration status issue.

On December 12, 2008, Plaintiff filed this Complaint seeking declaratory, injunctive, habeas corpus and/or mandamus relief. Plaintiff says the USCIS is in violation of 8 C.F.R. § 216.4(c) by failing to adjudicate his petition within 90 days of his interview. Plaintiff asks the Court to compel Defendants to adjudicate his petition by February 1, 2009 and to grant a writ of habeas corpus so that he can commence employment with the U.S. military. While Plaintiff attributes the delay in adjudication to the FBI's failure to process his name check, Defendants say the delay is a result of their continuing investigation. Defendants contend there is no mandated time frame for adjudication of a Form I-751, and Plaintiff's claims are not the proper subject of a petition for writ of habeas corpus or mandamus.

### III.     STANDARD OF REVIEW

"[F]ederal Courts, being courts of limited jurisdiction, must examine their subject-matter jurisdiction throughout the pendency of every matter before them." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 n. 1 (6th Cir.1996). "The established rule is that a plaintiff, suing in federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926). "The court has wide discretion to consider materials outside the complaint in assessing the validity of its jurisdiction." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**IV.     CASE LAW AND ANALYSIS**

Under the Immigration Marriage Fraud Act of 1986 ("IMFA"), 8 U.S.C. § 1101 *et seq.*, an alien spouse is only entitled to a two-year conditional status as a lawful permanent resident.  Within 90 days of expiration of the two-year period, an alien and his citizen spouse can file a joint application to remove the condition on the alien's residence and adjust his status.  At the end of the two-year probationary period, the condition is removed after a personal interview with a USCIS official so long as the marriage is bona fide and has not been terminated. 8 U.S.C. § 1186a.

Plaintiff says Defendants maintain a practice of failing and refusing to: (1) timely grant or deny adjustment applications; (2) schedule adjustment interviews; (3) notify adjustment applicants regarding the results of their adjustment interview; and (4) timely issue a decision on the adjustment applications. With respect to him, Plaintiff says this conduct constitutes a deprivation of a protected liberty interest, to wit, the right to work for a living in his chosen profession.

Plaintiff asserts subject jurisdiction based on: (1) the Federal Question Statute, 28 U.S.C. § 1331; (2) the Mandamus and Venue Act of 1962 ("Mandamus Act"), 28 U.S.C. § 1361; (3) the Habeas Corpus Statute ("Habeas Statute"), 28 U.S.C. § 2241; (4) the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., and 5 U.S.C. § 555(b); (5) the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq.; and (6) the Immigration Services and Infrastructure Improvements Act of 2000 ("ISIIA"), 8 U.S.C. § 1571.

The DJA does not provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 94 L. Ed.

1194 (1950). Similarly, the Federal Question Statute and the ISIIA do not provide an independent basis for jurisdiction. Thus, this Court examines the Mandamus Act, the APA, and the Habeas Statute for subject matter jurisdiction.

### A. Mandamus Act

Mandamus in federal court is governed by 28 U.S.C. § 1361. It provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency there-of to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is intended to provide a remedy only if the plaintiff exhausted all other avenues of relief and only if the defendant owes the plaintiff a clear nondiscretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 617, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984).

Mandamus relief is proper when three conditions are met: (1) the plaintiff has a "clear and certain claim" to the relief sought, (2) the defendant official has a "nondiscretionary, ministerial" duty to act "so plainly prescribed as to be free from doubt" and (3) no other adequate remedy [is] available." *Shen v. Chertoff*, 494 F. Supp. 2d 592, 595 (E.D. Mich. 2007) (Friedman, J.); see also *In re Gregory*, 181 F.3d 713, 715 (6th Cir. 1999) (holding that mandamus should "be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought and only in circumstances amounting to a judicial usurpation of power").

For purposes of mandamus jurisdiction, the petitioner's allegations, "unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction." See *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564 (10th Cir. 1981), quoted in *Ahmed v. Dep't of Homeland*

*Security*, 328 F.3d 383, 386 (7th Cir. 2003). However, the Mandamus Act generally does not provide an independent basis for federal jurisdiction. *Andrean v. Secretary of U.S. Army*, 840 F. Supp. 1414, 1420 (D. Kan., 1993) (citing *Craig v. Colburn*, 414 F. Supp. 185, 193 (D. Kan. 1976). It merely provides a remedy in actions otherwise properly brought on independent jurisdictional grounds. *Id.* (citing *Udall v. Oil Shale Corp.*, 406 F.2d 759 (10th Cir. 1969), rev'd on other grounds, 400 U.S. 48, 91 S. Ct. 196, 27 L. Ed. 2d 193 (1970); *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966), cert. denied, 385 U.S. 831, 87 S. Ct. 70, 17 L. Ed. 2d 67 (1966)). In other words, the duty owed to the plaintiff must arise on an independent basis that otherwise provides for federal jurisdiction.

There are exceptions to the requirement that federal jurisdiction arises on an independent basis. In limited situations, mandamus has been held to lie, absent independent jurisdiction, where the performance of an act is committed to discretion. An example is where federal officials fail to act within the zone of their permissible discretion, but abuse their discretion or otherwise act contrary to law. *Davis v. Shultz*, 453 F.2d 497, 502-03 (3d Cir. 1971). Another example is where a federal official takes or fails to take a required action as opposed to a decision taken within the federal official's discretion. *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997).

In *Davis*, *supra*, the plaintiff appealed a district court judgment dismissing his complaint for lack of subject matter jurisdiction. He had filed suit on behalf of himself and 178 other economically disadvantaged youths, to challenge their dismissal from a summer youth employment and training program implemented under Title I-B of the Economic Opportunity Act of 1964, 42 U.S.C. § 2737 *et seq.* The program was

6

administered by a local non-profit community agency under contract with the U.S. Department of Labor. Plaintiff argued the community agency should have been named as a prime sponsor.  Plaintiff said the Secretary of Labor had no discretion to permit the agency to operate a Title I-B program without a prime sponsor and was obliged to see that the duties of the prime sponsor were carried out.  The court affirmed the dismissal of the complaint because plaintiff sought to compel an act that was committed to the Secretary's discretion, i.e., the naming of a prime sponsor.  Moreover, plaintiff did not claim the Secretary varied from the permissible scope of discretion granted to him but rather that he disregarded a mandatory duty to appoint a prime sponsor.  Since the court found that no such mandatory duty existed, mandamus relief was not proper.

By contrast, in *Patel*, *supra*, a naturalized U.S. citizen and his East Indian wife filed a mandamus action to compel the U.S. consulate to make a decision on their family visa applications, which had been pending for eight years without action.  The INS (predecessor to USCIS) suspected the citizen was naturalized under false pretenses by marrying an American citizen while still married to his Indian wife, and began denaturalization proceedings. The consulate held the visa applications in abeyance pending conclusion of the denaturalization procedures.  The court concluded the consulate had a duty to act, and failed to act in accordance with its duty, because its provisional refusal of the applications did not fit within the regulatory exception to the requirement that the consulate either issue or refuse the visa. The court reasoned that the suspension of applications was authorized upon discovery of fraud or misrepresentation, but only if the consulate returned the petition to the INS for final disposition, which it had not done.  Consequently, the court issued the writ of

mandamus and instructed the consulate to render a decision within 30 days.

There is no controlling Sixth Circuit precedent and the decisions addressing whether mandamus jurisdiction exists to review claims to adjust status are divergent. *Tang v. Chertoff*, No. 07-203-JBC, 2007 U.S. Dist. LEXIS 64022, 2007 WL 2462187 at 3 (E.D. Ky. Aug. 29, 2007). The analysis turns to the requirements for issuance of a Writ of Mandamus.

### 1. Right to Relief Sought

Section 1186a of Title 8 of the United States Code provides:

> If--
>     (I) a petition is filed in accordance with the provisions of paragraph (1)(A), and
>     (ii) the alien spouse and petitioning spouse appear at the interview described in paragraph (1)(B),
> the Attorney General shall make a determination, within 90 days of the date of the interview, as to whether the facts and information described in subsection (d)(1) and alleged in the petition are true with respect to the qualifying marriage. 28 U.S.C. § 1186a(c)(3)(A).

Furthermore, the applicant must be notified of the decision of the director and, if the application is denied, the reasons for the denial. 8 C.F.R. § 216.4.

Section 1186a confers upon Plaintiff the right to have his petition adjudicated. Defendants do not argue otherwise. Therefore, the first element of mandamus relief is met.

### 2. Clear, Non-Discretionary Duty to Act

The parties do dispute whether Plaintiff is owed a clear, non-discretionary duty. As indicated above, unless a statute creates a duty owed to Plaintiff by Defendants, a Writ of Mandamus should not issue. Plaintiff argues that, pursuant to 8 C.F.R. § 216.4, Defendants have a duty to adjudicate his application within 90 days. Alternatively,

8

Plaintiff argues that the ISIIA states Congress' intention to eliminate the backlog in processing immigration benefit applications. Section 1571(b) of the ISIIA states that an immigration benefit application "should be" completed within 180 days. Thus, even though Congress may desire that immigration benefit applications be completed within a certain time period, it stopped short of declaring that those applications must be completed within that time period. Similarly, Congress failed to specify the consequences of a failure by the government agency to meet the statutory deadline.

Based on this, a majority of courts decline mandamus jurisdiction over status adjustment claims. These courts hold that all aspects of status adjustment-related claims, including the time period in which they are addressed, are matters within the discretion of the USCIS, and not subject to judicial review. See *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) (denying mandamus relief where defendant not required to process adjustment of status application at any particular pace), *Dridi v. Chertoff*, 412 F. Supp. 2d 465, 468 (E.D. Pa. 2005) (mandamus jurisdiction lacking because timeliness of immigration decisions are discretionary), *Chaudry v. Chertoff*, No. 06-1303, 2006 U.S. Dist. LEXIS 66842, 2006 WL 2670051, (D. Minn. Sept. 18, 2006) (same); *Espin v. Gantner*, 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005) (mandamus jurisdiction lacking because immigration status adjustment is wholly discretionary with the Attorney General); *Sadowski v. INS*, 107 F. Supp. 2d 451, 453 (S.D.N.Y. 2000) (mandamus jurisdiction lacking where INS has discretionary duty to decide matters of immigration status); *Tageddine v. USCIS*, No. 07-11315, 2007 U.S. Dist. LEXIS 61896 (E.D. Mich. July 12, 2007) (Zatkoff, J.) (court lacks mandamus jurisdiction where INS commits adjudication of adjustment of status applications to agency discretion).

Some courts, however, take jurisdiction over adjustment-related claims to determine whether a Writ of Mandamus should issue. These courts hold there is a duty to complete status adjustment, and other immigration matters, in a reasonable time frame. See *Rios v. Ziglar*, 398 F.3d 1201 (10th Cir. 2005) (alien seeking to adjust status to lawful resident alien under Nicaraguan Adjustment and Central American Relief Act can bring mandamus claim where processing application is a ministerial task rather than discretionary task, but mandamus is improper where alien failed to submit a proper application by deadline); *Iddir v. INS*, 301 F.3d 492, 500 (7th Cir. 2002) (INS had duty to adjudicate appellants' lottery visa applications within reasonable period of time but mandamus remedy not appropriate where visas could only be awarded within fiscal year for which they were selected and that time period had run); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978) (district court may consider whether INS has duty to conduct an investigation to determine whether visas should be issued, but court lacks jurisdiction to review suspension or denial of immigration visas or to compel the INS to investigate fraudulently obtained preference status), cert. denied, 439 U.S. 828, 99 S. Ct. 102, 58 L. Ed. 2d 121 (1978); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (immigration officials have non-discretionary duty to process naturalization application within reasonable time but 15-month delay not unreasonable); *Paunescu v. INS*, 76 F. Supp. 2d 896 (N.D. Ill. 1999) (INS had non-discretionary duty to issue a decision on plaintiffs' application for a lottery visa within a reasonable time, so mandamus relief was granted for 10-month delay); *Przhebelskaya v. USCIS*, 338 F. Supp. 2d 399, 405 (E.D. N.Y. 2004) (CIS had nondiscretionary duty to issue decision on plaintiffs' application for diversity visas within a reasonable time, thus mandamus was

granted), *Kiromi v. USCIS Detroit*, No. 07-10446, 2007 U.S. Dist. LEXIS 50797, 2007 WL 2049521 (E.D. Mich. 2007) (Cook, J.) (two-year delay not unreasonable, thus writ of mandamus not appropriate).

Plaintiff alleges the USCIS improperly delayed or refused to process his application to adjust status. Defendants say they have not completed their investigation and will render a decision once it is complete.  On October 14, 2005, less than one month after Plaintiff and his wife filed the joint petition, she wrote to USCIS stating that Plaintiff entered into the marriage to "gain access and to stay in the United States."  This was precipitated by several domestic violence incidents, one of which occurred on the date Plaintiff filed the joint petition.  The police report indicated the parties fought over money Plaintiff owed to his wife.  Based on the timing of the incidents, Defendants suspect the money was for payment expected by Plaintiff's wife for filing the joint petition.

After the joint interview of Plaintiff and his wife on November 1, 2006, Defendants say they requested further evidence in support of the petition, some of which they received in October 2007.  Defendants continue to have concerns whether this was and is a bona fide marriage; their investigation centers around these concerns.  Plaintiff's wife says by Affidavit that she explained during the interview that she wrote the letter because she was angry at her husband for striking her. She says she separated from her husband for some periods after that incident, but not since Plaintiff completed anger management classes.  She says their marriage is genuine and has been since its beginning.

This Court is of the view that no mandamus jurisdiction exists to review status

adjustment claims because they are matters within the discretion of the USCIS, not subject to judicial review.  But even if mandamus jurisdiction did exist to review Plaintiff's claims, given the facts and circumstances of this case, the delays are reasonable and the complications arose to a significant degree from the suspicious circumstances created by the actions of Plaintiff and his spouse.  Plaintiff and his wife were interviewed on November 1, 2006. On that date, Defendants raised concerns about the validity of the marriage and gave Plaintiff 30 days to provide additional requested evidence; it was not provided within the specified time frame.  On September 18, 2007, Plaintiff was advised by letter of the USCIS' intention to deny the joint application and given 30 days to provide additional information.  Plaintiff responded by letter on October 17, 2007, though it is unclear whether he provided all requested evidence.  Hence, at least 12 months of the delay in adjudication is directly attributable to Plaintiff. By the Court's calculation, that leaves a 14-month delay which may be attributable to the USCIS; this time period is not unreasonable.  Because Plaintiff fails to establish a clear right to relief, the second element of mandamus relief is not met.  The Court therefore lacks mandamus jurisdiction.

     **B. Administrative Procedure Act**

     Plaintiff also seeks relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., which provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The APA, by itself, does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105-06, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).  But, the APA in

conjunction with the federal question statute, 28 U.S.C. 1331, may allow federal courts to establish subject matter jurisdiction provided there is a valid APA claim.

While deportation proceedings are exempt from the provisions of the APA, rulemaking under the Act and other agency actions are not included within that exemption. See *Matter of Anselmo, Interim Decision* 3105 (BIA 1989); *Matter of Fedorenko*, 19 I&N Dec. 57, 63-64 (BIA 1984). Hence, those matters arguably can form the basis of a valid APA claim.

Plaintiff argues that Defendants have a duty to timely adjudicate his application under Section 555(b) of the APA. 5 U.S.C. § 555(b). The APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). It further provides that "[a] person suffering a legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA also states that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

The Supreme Court determined that "the only agency action that can be compelled under the APA is action legally required." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004). Agency action means "final agency action" and includes the failure to act. 5 U.S.C. § 704; 5 U.S.C. § 551(13). A claim may not be reviewed by a court if the relevant agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This means that "review is not to be had if the statute is drawn so that the court would have no

meaningful standard against which to judge the agency's exercise of discretion. *Heckler v. Chaney*, 470 U.S. 821, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985).

Moreover, a claim may not be reviewed by a court where the agency has not forestalled the decisive action regarding the matter, but is in the process of gathering the information necessary to make its decision. *Fonov v. Gonzalez*, No. C-3-07-207, 2007 U.S. Dist. LEXIS 71037, at 13 (S.D. Oh. 2007).

In *Fonov*, 2007 U.S. Dist. LEXIS 71037 (S.D. Oh. 2007), the court denied relief to a plaintiff seeking to compel the USCIS to adjudicate his adjustment application under the APA. The court reasoned that plaintiff had not alleged any facts that would show his application has been unreasonably delayed or that the Defendants were adverse to processing his application. Likewise, he had not alleged that the USCIS acted in bad faith or remained completely idle. In the absence of such allegations, the court ruled plaintiff did not plead factual allegations that created a duty by the Attorney General to adjudicate his application within a certain time period based upon the APA.

Similarly, in *Usai Kyaw Swa Oo v. Jenifer*, Case No. 07-CV-12030, 2008 U.S. Dist. LEXIS 21937 E.D. MI (March 20, 2008), the court declined to exercise jurisdiction under the APA to compel the USCIS to adjudicate plaintiff's adjustment application. The court reasoned that the Attorney General had sole discretion to process an application for adjustment of status under 8 U.S.C. § 1255(a), and in 8 U.S.C. § 1252, Congress expressly precluded review of any judgment regarding the granting of relief under § 1255. Thus, the court ruled that adjustment applications were matters within agency discretion precluded from judicial review under the APA.

Several other courts, however, have found that subject matter jurisdiction does

exist under the APA for the INS's failure to adjust status within a "reasonable time." See *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004) (42-month delay raises question of fact as to whether delay is unreasonable); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (five-year delay not unreasonable where asylee visas limited to 10,000); *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 355 (D. Ct. 2002) (approximately three-year delay not unreasonable where allegations of fraud surrounded his marriages to United States citizens).

Here again, the legally required action by Defendants is to adjudicate Plaintiff's change of status application. This action began and Defendants are investigating Plaintiff's application. Plaintiff has not alleged any facts that would show his application has been unreasonably delayed or that Defendants are adverse to processing his application. Likewise, he has not alleged that the USCIS is acting in bad faith or is completely idle. For these reasons, the Court concludes Plaintiff has not demonstrated that Defendants have a duty to adjudicate his application within a certain time frame. Accordingly, judicial review is not available.

### C. Habeas Corpus Statute

The remedy sought by Plaintiff is one provided by federal statute. 28 U.S.C. §§ 2241 et seq. (1988). Among other things, the law provides that the Great Writ shall not extend unless the petitioner is in custody. 28 U.S.C. § 2241 (1988). In addition, it states that all writs of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243 (1988). Writ of habeas corpus can reach behind prison walls and iron bars, but it is not a static, narrow, formalistic remedy; its scope

also includes protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. *Jones v. Cunningham* (1963) 371 US 236, 9 L Ed 2d 285, 83 S Ct 373, 92 ALR2d 675.

Plaintiff says *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1971) supports his proposition that the Court should broadly construe the concept of "liberty." Plaintiff cites *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915) as standing for the proposition that one has a constitutionally protected liberty interest in pursuing a chosen occupation. Plaintiff says Defendants' failure to adjudicate applications within regulatory deadlines or within a reasonable amount of time constitutes a deprivation of that protected liberty interest. In Plaintiff's view, this equates to "custody" for habeas purposes.

Defendants say the removal of conditions on permanent residence is a decision committed to the judgment of the Attorney General, hence the Court has no jurisdiction to compel the approval of Plaintiff's Form I-751. Moreover, Defendants say Plaintiff is not "in custody" under *Jones v. Cunningham*. Accordingly, they say his claim is not a proper subject of a petition for writ of habeas corpus. The Court agrees.

First, Plaintiff's allegations do not satisfy the "in custody in violation of the Constitution or laws or treaties of the United States" requirement for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is the appropriate remedy for an inductee seeking discharge from the Army based on an improper classification by the Selective Service. *Witmer v. United States*, 348 U.S. 375, 377, 75 S. Ct. 392, 99 L. Ed. 428 (1955). Habeas corpus has also been deemed the appropriate remedy for an enlistee who was denied an in-service discharge as a

conscientious objector. See, e. g., *United States ex rel. Brooks v. Clifford*, 409 F.2d 700 (4th Cir. 1969). However, Plaintiff does not seek a discharge from the military. In fact, he seeks to deploy with his army unit and "take his chosen job." And, he does not have a custodian. The Court has found no cases in which an enlistee sought or was granted a writ of habeas corpus under the circumstances pled by Plaintiff. This novel theory advanced by Plaintiff does not fall within the meaning of "in custody." As expressed by the Supreme Court in *Hensley v. Municipal Court*, 411 U.S. 345, 93 S. Ct. 1571, 36 L. Ed. 2d 294 (1973):

> The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.

Id. at 351, 93 S. Ct. at 1574.

Second, contrary to Plaintiff's assertions, the interests involved are not encompassed in the Fourteenth's Amendments protection of liberty or property. In *Board of Regents*, supra, cited by Plaintiff, a nontenured college teacher sued university authorities after his one-year employment contract was not renewed. The teacher argued he was denied procedural due process when he was not given the reasons for the decision not to rehire. The university authorities appealed a Seventh Circuit judgment affirming the lower court's grant of summary judgment to the teacher. The Supreme Court reversed and held that the Fourteenth Amendment did not require opportunity for hearing prior to the nonrenewal of the nontenured state teacher's contract, unless he could show that the nonrenewal deprived him of an interest in

17

"liberty" or that he had a property interest in continued employment despite the lack of tenure or a formal contract. The Court found that the nonretention of the teacher, absent any charges against him or stigma foreclosing other employment, was not tantamount to "liberty." Similarly, the terms of the teacher's employment accorded him no "property" interest protected by procedural due process.

     Likewise, no liberty interest or property interest is implicated here. Plaintiff has not alleged that the conditions on his residence prevent him from obtaining *any* employment; he only maintains that the conditions prevent him from deploying with his army unit. However, a "reserve of the armed forces who is not on active duty . . . is deemed not an employee . . . [of] the United States." 5 U.S.C. § 2105(d). Moreover, while an alien may be eligible for a grant of asylum or an adjustment of status under the immigration laws, he is not entitled to such benefits as a constitutional matter. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). Thus, Plaintiff cannot claim a constitutionally protected liberty interest to work in the military.

     In the same vein, an alien has no inherent property interest in an immigrant visa, and the IMFA does not grant any such property interest. *Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2nd Cir. 1990). To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents*, 408 U.S. at 577. Of course, "[p]roperty interests . . . are not created by the Constitution," *Id.*, and the Supreme Court has recognized that constitutionally protected liberty or property interests may spring from positive rules of law, enacted by the state or federal government and creating a substantive entitlement

18

in a particular government benefit. See, e.g. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1976) ("[A] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.").

Nevertheless, the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible. See *Id.* ("A constitutional entitlement cannot be created . . . merely because a wholly and expressly discretionary state privilege has been granted generously in the past."); *INS v. Miranda*, 459 U.S. 14, 18, 103 S. Ct. 281, 74 L. Ed. 2d 12 (1982) ("Both the number of applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as desirable."). Thus, Plaintiff cannot assert a constitutionally protected property interest in a permanent resident card.

Because Plaintiff has not demonstrated that he is "in custody" or that he has been denied a constitutionally protected property or liberty interest, the Court lacks jurisdiction to hear his habeas claim. Even if it had jurisdiction, Plaintiff would need to specify the gross unreasonableness of the delay in his case to persuade the Court to intervene notwithstanding Defendants' vested interest in protecting national security. See *Lazli v. USCIS*, No. 05-CV-1680-BR, 2007 U.S. Dist. LEXIS 10713, 2007 WL 496351 (D. Or., Feb. 12, 2007).

## IV.    CONCLUSION

For the reasons stated, the Court finds it lacks subject matter jurisdiction over

Plaintiff's status adjustment claim. This matter is **DISMISSED.**

      **IT IS ORDERED.**

                                        /s/ Victoria A. Roberts  
                                        Victoria A. Roberts  
                                        United States District Judge

Dated:  January 23, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 23, 2009.

s/Linda Vertriest  
Deputy Clerk

---